UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

KENDELL ANDERSON          )
           )
      Plaintiff,      )     CASE NO.  4:25-cv-00040-SEB-KMB
           )
     v.      )
           )
LUCID GROUP USA, INC.,     )
           )
      Defendant.     )

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

This matter comes before the Court on Defendant's Motion to Compel Arbitration [Dkt. 13].  Plaintiff Kendell Anderson ("Anderson") has filed his response in opposition [Dkt.17] and Defendant has replied [Dkt. 18].  The motion is fully briefed and ripe for a ruling.

On April 11, 2023, Anderson purchased a 2023 Lucid Air Touring from Lucid Group USA, Inc. and signed a Purchase Agreement confirming his preferred vehicle specifications, configuration, price and including specific terms and conditions.  *See* Declaration of Laurie A. Hupman ("Hupman Decl.") ¶ 4. He agreed to arbitrate any claim or dispute between himself and Lucid.  A prospective buyer cannot acquire a Lucid vehicle without assenting to these terms. *Id*. ¶ 5.

The Agreement ["Purchase Agreement"] Plaintiff signed includes Lucid Group USA's Order Terms and Conditions, which, in turn, contain an arbitration provision:

> **Disputes, Arbitration, Waiver of Jury Demand**
>
> If either you or we have a dispute, the party raising the dispute will send a written notice of the dispute to the other, along with the requested resolution.  You can send your request to us at disputes@lucidmotors.com.  If a dispute is not resolved within 60

days, **you and we agree that any dispute or claim between you and us or relating in any way to this Agreement will be resolved by binding arbitration,** rather than in court, except that either you or we may assert claims in small claims court if the claims qualify.

*******

Claims arising out of or relating to the validity, application, scope, enforceability, or interpretation of this provision (the "Arbitration Agreement") shall also be decided by an arbitrator and will be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

*******

We also both agree that you or we may bring suit in court to: 1) enjoin infringement or other misuse of intellectual property rights; 2) filed bankruptcy; 3) enforce a security interest in the Vehicle by repossession; 4) take legal action in court to enforce the arbitrator's decision; or 5) request that a court review whether the arbitrator exceeded the authority granted by this Arbitration Agreement.

*******

**Opt-Out: You may opt-out of the Arbitration Agreement, within 60 days from the date you accept this Agreement,** by sending an email to Optout@LucidMotors.com from the email associated with your order with "Arbitration Opt-Out" in the subject line and indicating your request to opt-out of the arbitration provision in the body of the email.

See Id. ["Purchase Agreement"] at pp. 4-5 (emphasis added.)

Plaintiff was entitled to opt-out by emailing Lucid Group USA at Optout@LucidMotors.com with "Arbitration Opt-Out" in the subject line and opt-out request in the body of the mail. *See id.* He did not do so. (Lucid Group USA reportedly maintains records of customer opt-out requests, and it did not receive any such request from Plaintiff. *See* Hupman Decl. ¶ 7. The last day for Plaintiff to opt-out was June 10, 2023.)

Plaintiff filed this lawsuit against Lucid on January 10, 2025. *See* Dkt. 1-2, Ex. 2 [Complaint] in Floyd Superior Court. On March 7, 2025, Lucid removed the matter to this Court. *See* Dkt. 1. Defendant filed their answer on March 14, 2025, and this motion to stay pending arbitration on April 14, 2025. Through this action Plaintiff alleges three separate claims for Breach

of Express Warranty, Breach of the Implied Warrant, and violation of the Indiana State Motor Vehicle Protection Act. *See, generally,* Compl. Construed liberally with the benefit of every available inference, Plaintiff's claims rest on his apparent dissatisfaction with repairs requested or conducted by Lucid. Plaintiff asserts that he "tendered the vehicle to [Lucid} for repairs on several occasions" but that Lucid "failed to cure the vehicle's defects despite being provided a reasonable opportunity to do so." *See* Dkt. 1-2, Ex. 2 [Complaint] ¶ ¶ 17-18, 30-31.

Plaintiff notified Defendant in writing of the vehicle's uncured defects and revoked acceptance in a letter dated August 19, 2024. (Plaintiff's Complaint ¶ 22). On August 28, 2024, Defendant sent a letter to Plaintiff directly in which it declined his request for relief but advised that he may seek further review of his claims with the arbitration service "provided by Lucid: BBB AUTO LINE." (August 28 letter, Exhibit "A"). On September 9, 2024, Defendant sent an email to Plaintiff's counsel attaching the August 28, 2024, letter as its response to the notice of claim letter without additional comment. (September 9 email, Exhibit "B").

On October 5, 2024, Plaintiff submitted his claims to the BBB AUTO LINE arbitration as directed by Defendant. Plaintiff completed the BBB AUTO LINE process and rejected the decision of the arbitrator, as Plaintiff asserts was permitted by the arbitration rules.

The Agreement to Arbitrate at issue here is governed by the FAA, per the language of the agreement itself: it "will be governed by the Federal Arbitration Act. Hupman Decl. Ex. A [Purchase Agreement] at p. 4. The FAA governs for the additional reason that the agreement "involves commerce." *AT&T v. Concepcion* (2010) 563 U.S. 333, 339. The term "involving commerce" is to be interpreted broadly. *See, e.g., Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56 (finding FAA applied even though there was no substantial effect on commerce). It is the functional equivalent of "affecting.*" Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513

U.S. 265, 274 ("[E]xaming the statute's language, background, and structure, we conclude that the work 'involving' is broad and is indeed the functional equivalent of 'affecting'").  Plaintiff's three claims arising from his purchase and use of a 2023 Lucid Air Touring vehicle unmistakenly relate to commerce.  The procedures, policies and preemptive effect of the FAA therefore apply.

As stated above, Plaintiff sent notice of his claim to Defendant in August 2024.  Defendant responded by denying the repairs and/or recission of the sale and  directing Plaintiff to the arbitration service BBB AUTO LINE and Plaintiff complied with this request.  (Exhibits "A" and "B" to Defendant's Brief).  In its August 19, 2024, letter to Plaintiff (resent to Plaintiff's counsel on September 9, 2024), Defendant states that he selected the BBB AUTO LINE as his arbitration service of choice.  This election of arbitrator is consistent with the terms of arbitration stated in the agreement, argues Plaintiff.

> **Unless otherwise agreed,** the arbitration will be conducted by the American Arbitration Association ("AAA").
>
> A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration.  AAA provides a form Demand for Arbitration – Consumer Arbitration Rules at www.adr.org.

(Defendant's Exhibit "A", Purchase Agreement Sec. 11).  (emphasis added.)

Defendant has relied on Section 11 of the Purchase Agreement for its motion to compel arbitration, but, according to Plaintiff, Defendant has disregarded the provision of the Agreement quoted above.  Defendant allegedly did not select the arbitration service to which Plaintiff agreed by completing this process and Defendant cannot now request a second arbitration.

Plaintiff maintains that, in fact, Defendant never requested arbitration as it does now in the pending motion.  Instead, Defendant seeks what amounts to a second arbitration process.  The

actions by Defendant according to Plaintiff were both dilatory and inconsistent with its intent to arbitrate which it could have demanded in August 2024.

## DISCUSSION

The Federal Arbitration Act ("FAA") embodies "both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Gupta v. Morgan Stanly Smith Barney, LLC,* 934 F.3d. 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011)). Indeed, the FAA regards written arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. Thus, when presented with a valid arbitration agreement, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. " *Id.* § 4. Courts must grant a motion to compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement to arbitrate, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co.,* 417 F. 3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. §4).

The parties do not dispute that the arbitration provision under review here delegates all issues for arbitration or that the claims raised by Plaintiff in his Complaint are subject to arbitration under their agreement. The only dispute between them is, first, whether Defendant waived its right to compel arbitration by its dilatoriness in asserting that right and second, whether, by contacting the BBB AUTO LINE Program as recommended by Defendant, Plaintiff submitted this disagreement to arbitration such that when the recommendations of the BBB were rejected by Plaintiff, his duty to arbitrate had been satisfied, allowing him to file suit on the underlying claims.

In response to these arguments, we find that Defendant's alleged delay in asserting its right to arbitration did not result in a waiver of that right. First, the period of delay was neither

significant nor prejudicial to Plaintiff's interest. In addition, there is no evidence to establish that Defendant expressly intended to abandon its right to arbitrate. Finally, there is no basis on which to reasonably infer a waiver based on Defendant's actions. *See, Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.* 660 F.3d 988 (7th Cir. 2011). Defendant's right to arbitrate this dispute was not waived.

As for the BBB program, the record reflects that that was an alternate dispute forum available to purchases on a voluntary basis. There is no evidence that it was a substitute for arbitration or an alternative arbitration forum or that it was intended as a means to fulfill the parties' contractual obligation to arbitration. Defendant offered the BBB program as a voluntary, non-binding dispute resolution process, not as a way around the binding arbitration provisions set out in the purchase agreement The BBB program existed wholly independent of any contractual agreement to arbitrate any disputes. The argument that a signed agreement to arbitrate any unresolved disputes between signatories could be invalidated simply by reference to the existence of a separately available voluntary program is unavailing.

## CONCLUSION

For these reasons, the Motion to Compel Arbitration [Dkt. 13] is GRANTED. Rather than stay this litigation on the Court's docket should the arbitration fail to resolve their entire controversy, an amended complaint can be filed.

IT IS SO ORDERED

Dated: _____3/31/2026_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

6

Distribution to counsel of record via CM/ECF